Good morning, ladies and gentlemen. Welcome to the Ninth Circuit. Nice sunny day out there, of course. Before we hear our argued case, we have a couple of housekeeping matters. First of all, actually before we do that, Judge Owens and I are delighted to welcome Judge Xavier Rodriguez from, I think it's the Western District of Texas, is it not? He's sitting with us by designation, and we're honored to have him with us today. The other matter, we have two items to submit. They are Valenzuela Rivera v. Garland and Vargas Hernandez v. Garland. Both those matters are now submitted, and we'll now hear argument in the case of Galanti v. Nevada Department of Corrections. And I believe, let's see, I believe the appellant, it's a law student, right? Delighted to have you here. Appreciate your efforts. And so this is Rizal Dazon, is that the way you say it? And Leah Sperry, is that right, is the supervising attorney. So thank you very much. Please proceed. Good morning, your honors. May it please the court. My name is Rizal Dazon, and I, along with Justine Chang, our student co-counsel representing the appellant, Mr. Philip Galanti, on behalf of the UC Law San Francisco Appellate Project. I will watch the clock and hope to reserve three minutes of my time for rebuttal. Good luck. There is no dispute that Nevada prisoners are entitled to deductions from their maximum sentences upon completion of qualifying courses regardless of the offense type, and that the basis of this entitlement is the mandatory language of Nevada time credit law, which creates a liberty interest in earned credits. Here, Mr. Galanti's pro se complaint sufficiently alleges four distinct violations of his due process rights related to these credits. They are as follows. First, that prison officials delayed reporting and applying his credits. Second, that prison officials ignored his grievances about the delay. Third, that Mr. Galanti was denied access to his credit and sentence reports. And last, that prison officials kept him in custody past the expiration date. These allegations must be taken as true and liberally construed at this stage of the proceedings. Counsel, where in the complaint do you allege deprivation of the deductions for the maximum sentence? Not the minimum, but the maximum. Yes, Your Honor. On pages 40 to 44 and 45 of the excerpts, Mr. Galanti repeatedly refers to the end of his sentence as his expiration date in the record. And in Nevada, parole is part of the maximum term and not a separate term after the custodial term. So a complaint discussing deductions off of the expiration date in Nevada means deductions off of the maximum. So it's kind of an implied allegation. Is that what you're saying? In other words, you don't specifically state that he was deprived based upon the maximum sentence. Yes, Your Honor. However, in Nevada, whenever anybody talks about the expiration date, they're talking about the maximum because of how it's conceptualized. Yes. Am I implied, right? Yes, Your Honor. How does this case deal with under the Nonet exception to the Heck bar? What's your best argument that it applies, Nonet applies as opposed to Guerrero? Yes, Your Honor. So only some of Mr. Galanti's claims would be barred by Heck. And for those that don't, the Nonet exception applies as you provided. And why? The exception applies because when Mr. Galanti first filed suit in June of 2019, he was already out of custody, so habeas relief was no longer available to him. And in Guerrero, this court held that there is an outer limit to the Nonet exception in cases where the plaintiff fails to timely pursue relief. And there, this court held that the plaintiff, his failure to timely file relief was self-imposed. So in this case, well, Nonet, as I understand it, the claim was made while he was still in prison. In Guerrero, he made the complaint three years after he got out. Your guy is one year. How do we deal with that? Which one applies and why? The Nonet exception still applies because this case is nowhere near the outer limit of Nonet set forth by Guerrero as you provided, Judge Smith. The plaintiff there waited three years before filing a 1983 claim and actually five years after the first set of claims that he was alleging on his complaint. And here, Mr. Galanti filed within the first year of his release and did not have sufficient time to file suit while he was incarcerated because the due process violations occurred relatively close to his sentence expiration date. So the Nonet exception applies here. I want to return to two of your points. You said the delay in credits. Is the record anywhere clear about when he should receive the vocational credits? Mr. Galanti received his vocational certificate in April of 2018. This is the same month that he also received his GED diploma. And he wasn't expired. His sentence wasn't expired until August of 2018, which means that prison officials had nearly four months to timely apply and credit these earned credits. And you also said he was past his custody date as opposed to the parole date. As I read his First Amendment complaint, he seemed to say that he was released on June 1, 2018, and that was the date he should have been released. So what is he arguing? Is he arguing he was held in custody excessively, or is he arguing that he was placed on parole for a longer period than he should have been? Mr. Galanti was paroled in June of 2018, and we are arguing over-detention here because on page 40 to 41 of the excerpts, he alleges that at the very least, he should have been released on June – his sentence should have expired, and he should have been released from all forms of custody by June of 2018. But instead, his sentence expired in August of 2018. And we believe that he may have been entitled to release even sooner, but he did not have the records that he needed to calculate a more precise date. This constitutes another one of Mr. Galanti's claims that he was denied access to his credit and sentence reports. But that's what I'm trying to figure out. If this is remanded back to the district court, are we having an allegation that he suffered damages for being on parole for too lengthy of a time? Is that what this is going to come down to? All four of his due process violations are compensable, Your Honor. Over-detention on parole is a compensable injury under well-established Nevada and federal law. In Garnick v. Miller, the Nevada Supreme Court held that parole is the form of custody where the state still has control over the inmate's liberty and that a state cannot keep someone confined beyond their legal authority to do so. And in Haygood, this court held that over-detention past the expiration date is unconstitutional, so the same legal principles apply to parole because when a state keeps someone confined beyond their legal authority to do so, whether in constructive or physical custody, is a cognizable injury under Section 1983 and a deprivation of liberty. So your answer to his question is yes, it's on parole then, right? Yes, Your Honor, over-detention on parole. Judge Smith asked you some questions about heck. I take it it's still your position, though, that the state effectively waived its heck argument but not presented it again in its supplemental brief. Correct, Your Honor. The state did not mention heck in their answering brief. In the second one? In the second one. In the first one they did. Correct. So I'll have some questions for them about that. Yes. Thank you. If there are no further questions, I'd like to request there be some time for a vote. Very well. Thank you. All right. Let's hear from the state. Good morning, Your Honors. Sabrina Clinton, Deputy Attorney General for the State of Nevada, representing NDOC. May it please the Court. The goal of statutory interpretation is to give effect to legislative intent. Looking at the statutory scheme for Nevada's sentencing and release, Nevada has no intent to create a liberty interest in any early release. Construing NRS 295.4465 as creating a liberty interest to reduce maximum time runs afoul of that principle. Counsel, you know we had asked you to brief this issue. Didn't you waive that issue by not raising it? By not waiving it. In other words, did you fail to argue that the state didn't create a constitutionally protected interest in a maximum credit deduction? I don't believe it was waived in our brief. We argued that with the statutory interpretations of the Nevada corrections that we never waived that or authorized that. I don't believe the brief waived that. Okay. If you didn't raise it, is it not waived? It was raised in the context of our reliance on the statutory construction of the provisions that it's not expressly there. That's your argument.  If you're claiming this is what it means, have you not waived the argument? It was a new argument that was presented by the respondent in their supplemental brief, and I believe that we did raise the argument and respond to it in our supplemental answering brief. So that's your claim that you didn't waive it was that you responded ultimately in the supplemental brief. Is that right? Correct. Okay. But, counsel, aside from the waiver issue, I'm just trying to make sure I understand the program in Nevada. So if I'm imprisoned and I do a course or I take one of the things where I can get good time credits, but there's a mistake, an honest mistake, and instead they thought I earned 10 credits when really I earned 100. If I'm a defendant in that situation and I end up spending an extra 90 days under Well, if there's an error, then the error should be reported through the administrative process, the grievance process, to address the error. In this case, the respondent commenced his complaint on the issue of parole and being dealing with the expiration of the sentence. And there are two different things. Here, if there was an issue with his sentencing, inmates have an obligation under Nevada statutory law to, within 180 days of the expiration of their sentence, complain about sentence discrepancies. And if they fail to do that, that can delay the processing. And there's no duty on the part of the state to immediately adjust a credit based on the attainment of credits by an inmate. There's no statutory obligation. And so in this case, the record reflects that the appellant earned his credits in April of 2018 and he was released two months later. There's no allegation in the complaint or information in the complaint that specifies the term of the sentence for the appellant. If the court would take judicial notice of Nevada public offender records, it indicates that the appellant's sentence was a five-year sentence commencing on December 30, 2015. Accordingly, his expiration would not have been until December 30, 2020. Under the facts presented here, he was released June 2018, more than a year and a half prior to the expiration of his sentence. But this is a motion to dismiss we're talking about, right? Yes, it was the order affirming our motion to dismiss. So it might, your version of the facts may ultimately be correct, but at this stage, don't we have to take the facts as he alleges them and saying that effectively that he and his mom, I think, complained and no one would help him out and then he ended up spending too much time? Even if he did complain, the options available for the appellant are to go through the grievance process as well as to take legal action at that stage to address a failure to apply provisions as he's alleging. But in any case, an error in applying state law, whether it's in regard to the processing of his credits, et cetera, does not create a due process claim under the 14th Amendment. I understand the violation of the state law doesn't, but at the end of the day, if he's kept in prison longer than he should have been, it seems to me that is a violation of federal law. But since he has no liberty interest in early release to begin with and his sentence expiration was June of 2018 and that's when he was released, then there is no due process violation. But irrespective of that, the HEC bar as well as the fact that defendants have qualified immunity render his claims non-compensable. Let's talk about the HEC issue because they're saying you waived it and I looked at the supplemental brief and the HEC does not appear in there. So what would you say about that? That's correct that it does not appear in there, but our brief was a supplemental brief. It was not a replacement brief. We didn't disregard our earlier brief. Our arguments concerning HEC stood and their arguments in regard to it didn't obviate the strength of our arguments. So there was no purpose from our perspective to repeat what we had already argued as the What's your best argument for qualified immunity, at least with respect to the maximum deductions claim? Didn't you waive that? Waived it in what sense? We argued it in our motions. I'm not understanding your question, Your Honor. With respect, not the minimum deduction, but the maximum deduction claim, I did not see that you claimed qualified immunity for the individuals involved on that count. Is that correct or not correct? Our claim or our argument for qualified immunity was applicable to all of the claims that were asserted, and the fact that it's our contention that the scope of the arguments morphed during the process, but our qualified immunity argument would be applicable to all the claims asserted by appellant. So in other words, from your perspective, even though there's a distinct difference in the way these are treated, you're saying if you claim the defendants are entitled to qualified immunity, that applies across the board, regardless of the nature of the claim. Is that your position? In this scenario, yes, because both of the claims deal with they didn't violate clearly established constitutional rights, which a reasonable person would have known. In this instance, what the department was following is consistent with what it had been following and applying concerning its statutes. So they would have had no way to know in the former argument or the latter argument that there was an issue. It's your position that there was no clearly established liberty interest in Mr. Galante's case as to the maximum deduction? Is that your position? In responding to the question of the court, that's correct. And do you have any case that says there is no such liberty interest here, or that's just your position? It's our position based on the entire statutory theme and structure of the Nevada sentencing guidelines. If the court were to construe, as the appellants are requesting, that there's a liberty interest in the reduction based on credits, then it would also be determining that there's a deliberate interest in early release. And Nevada statutory and case law has repeatedly held that there is no liberty interest in early release. So construing the statute in the manner that the appellants propose would obviate all of the other cases and statutory precedents in the application thereof. Let me ask my colleague whether either has additional questions. All right. Very well. Your time is up. Thank you so much. So let's now hear again from Ms. Dazon. Your Honors, this is not a case about early release, a liberty interest rather, an early release on parole, because we acknowledge that well-established Nevada law provides that Mr. Galante does not have a liberty interest in early release on parole. However, that is a distinct concept from being over-detained on parole, which is a cognizable injury under 1983. And, yes, we do agree, we do concede that there are references to parole in the pro se complaint. However, our position is that these references to parole do not defeat the plausibility of Mr. Galante's claims, because the pro se complaint mentions deductions to the maximum satisfies the very liberal pleading requirements at this stage of the pleadings. This was a pro se pleading, was it not? Correct, Your Honor. So we construe that liberally, is that correct? Yes, Your Honor. But should this case go back on remand? What happens to the equal protection arguments? Our position is that Mr. Galante has stated a viable claim of discrimination against sex offenders among similarly situated inmate students. And what does he cite for that? I mean, I know that's his view, but did he cite any other instances that he felt, admittedly, at a pleading stage, that he felt gave him some basis for making that claim? Yes, Your Honor. On page 45 of the excerpts, Mr. Galante provides that student inmates convicted of sex offenses are subject to disparate treatment. Page 45. But weren't those conclusory allegations? He was 12 lead on that, wasn't he? No, Your Honor. On page 45 of the record, Mr. Galante points to a public statement by the prison warden that provides that sex offenders would be denied earned credits absent a court order requiring the deductions. And he provides that this is a practice that is still in practice today. On page 46 of the record, Mr. Galante provides that defendants hate sex offenders and that he firmly believes that the aforementioned defendants, knowing he was a sex offender as well as a felon, used his status and information to justify their actions or unlawful conduct. I'd like to return to your question about the Heck Bar, Judge Smith, and our best arguments for the Heck Bar. Thank you. Only some of Mr. Galante's due process claims would fall within the purview of Heck. And for those that do, the Nonet exception applies. For example, the second and third due process violations that prison officials ignored his grievances about the delay and denied him access to his credit and sentence reports are challenges to the prison's unlawful procedures. And in Heck, the United States Supreme Court recognized that procedural challenges are not within the purview of Heck because a decision in that favor does not necessarily implicate or challenge the duration of confinement. And for the claims that may implicate the duration of confinement, Nonet applies because Mr. Galante was no longer in custody when he filed suit, so habeas relief was unavailable. One final question for you, counsel. Let's say this case you win, and let's say this case goes back to the district court. You may want to check with your supervising attorney about this. What happens? Are you guys still on the case? Unfortunately, our clinic doesn't work with the district court, Your Honor. So Mr. Galante would have to try to find counsel, hopefully, somewhere. Okay. Got it. Yes. Another question? Where are you going to school, to law school? UC Los Angeles. Formerly UC Hastings. Indeed. Indeed. Well, congratulations. You did a wonderful job. Thank you. We always are very grateful to have law students come and argue. You can have great satisfaction regardless of whatever the outcome of the case is. You did a very fine job, and we congratulate you and welcome you to argument before the Ninth Circuit. We hope you'll come back when you're practicing. Thank you, Your Honor. Whatever the name of the law school, you did a great job. The case just argued is submitted, and the Court stands adjourned for the day.
judges: SMITH, OWENS, Rodriguez